IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BENJAMIN KIRITU GAKINYA, ) | Case No. 05-20150 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| BENJAMIN KIRITU GAKINYA, ) | Adversary No. 06-2054 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COLUMBIA COLLEGE, ) | |
| ) | |
| and ) | |
| ) | |
| GENERAL REVENUE CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Benjamin Kiritu Gakinya ("Debtor") filed a complaint alleging that Defendants violated the discharge injunction by attempting to collect a debt owed to Columbia College by Debtor that was discharged by the discharge order entered in Debtor's bankruptcy case. Defendants disagree and assert that the debt owed by Debtor was a student loan that was excepted from discharge. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Debtor's debt owed to Columbia College was a student loan and excepted from discharge; thus, Defendants did not violate the discharge injunction by attempting to collect such debt.

I. PROCEDURAL BACKGROUND

On January 26, 2005, Debtor filed a Chapter 7 bankruptcy case and listed Columbia College as a creditor with a claim in the amount of $7,106.78 for "Education." (the "Debt"). Debtor did not file an adversary proceeding to have the debt declared dischargeable. On May 6, 2005, a discharge order was entered in the bankruptcy case. Subsequently, Defendants attempted to collect the Debt[1]. On September 29, 2006, Debtor filed this adversary proceeding seeking damages for the willful violation of the discharge injunction by Defendants. On November 3, 2006, Columbia College filed its answer to the complaint and on November 30, 2006, General Revenue Corporation filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). General Revenue argued that the Debt is a student loan debt resulting from a promissory not and contract he signed with Columbia College and that the Debt was not discharged because Debtor did not file an adversary proceeding a demonstrate that it would be an undue hardship for him to repay the loan under 11 U.S.C. § 523(a)(8)[2].

On December 6, 2006, the parties held a telephonic conference with the Court and agreed to submit the case on stipulated facts and briefs. A Joint Stipulation of Facts was filed on December 14, 2006. On December 19, Columbia College filed a trial brief. On December 20, 2006, Debtor filed a response to General Revenue's motion to dismiss to the effect that it should be considered a motion for summary judgment and Debtor filed his own motion for summary

---

[1]Debtor also originally named Windham Professionals as a defendant in this matter for allegedly attempting to collect the Debt in violation of the discharge injunction. On December 11, 2006, Debtor and Windham Professionals entered into an agreed stipulation and, on December 12, the Court approved the agreed stipulation and Windham was dismissed as a defendant.

[2]Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or her dependents. The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor. *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981); *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001).

judgment. Subsequently, Defendants filed responses to Debtor's motion for summary judgment and argued that it should be denied.

## II. FACTUAL BACKGROUND

Debtor attended Columbia College as a full-time student in the spring semester of 2003. Stipulated Facts, ¶ 4. Columbia College is a Missouri non-profit corporation and is a nationally accredited college offering undergraduate and graduate-level courses. Stipulated Facts, ¶ 5. Columbia College charged Debtor tuition in the amount of $5,463.00 for the spring semester of 2003. The tuition and fees were due in full at the time Debtor registered. Stipulated Facts, ¶ 6. Columbia College also awarded Debtor a scholarship in the amount of $1,000 for participation in the school choir but reversed the scholarship credit given due to Debtor's withdrawal from choir. Stipulated Facts, ¶¶ 7, 15. Columbia College agreed to allow Debtor to pay the tuition, after adjustments for additional fees and a credit for his scholarship, through its Deferred Payment Plan. Stipulated Facts, ¶ 8. As part of that Plan, Debtor executed a contract and promissory note in favor of Columbia College in the amount of $5,199.51 on January 15, 2003. Stipulated Facts, ¶ 9. The terms of the Plan are contained in Columbia College's Undergraduate Catalog and it does not receive money to disburse to students from any entity, nor to apply to student accounts from any entity. Stipulated Facts, ¶¶ 11, 12, 13. No money was disbursed by Columbia College to Debtor in connection with either his participation in the Deferred Payment Program or his execution of the promissory note. Stipulated Facts, ¶ 14. In February 2003, Columbia College reversed the scholarship credit given to Debtor for participation in the choir. In the event a student's financial aid changes, it is Columbia College's policy that the student is responsible for immediate payment of the difference. Stipulated Facts, ¶¶ 15, 16.

Prior to filing bankruptcy, Debtor made a payment or payments to Columbia College on

the promissory note and the remaining balance owed on the note, as well as the revoked scholarship, along with finance charges and collection fees remained unpaid at the time of filing. Stipulated Facts, ¶¶ 17, 18. Debtor listed Columbia College in his Schedules as holding a claim in the amount of $7,106.78 and indicated the consideration for the claim was "Education." Debtor did not indicate the claim was contingent, unliquidated or disputed. Stipulated Facts, ¶ 19. Debtor did not file an adversary proceeding requesting the Court to discharge his debt to Columbia College on the basis that it would impose an undue hardship on Debtor. Stipulated Facts, ¶ 20.

Prior to the bankruptcy filing, Columbia College contracted with General Revenue to collect the unpaid balance on the promissory note. Both Defendants were listed as creditors in Debtor's Schedules and received notice of Debtor's discharge. Stipulated Facts, ¶¶ 21, 22, 23. General Revenue, acting as agent for Columbia College, attempted to collect the unpaid balance due on the note by sending Debtor account statements on or about April 7, 2006. Stipulated Facts, ¶ 24.

### III. DISCUSSION

#### A. Standard of Review

Federal Rule of Bankruptcy Procedure 7056( c), applying Federal Rule of Civil Procedure 56 ( c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161

(1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A 'genuine issue' in the context of a motion for summary judgment is not simply a 'metaphysical doubt as to the material facts'." *Id*. Rather, "a genuine issue exists when the evidence is such that a reasonable fact finder could find for the non-movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record for summary judgment, the court is required to draw all reasonable inferences in favor of the non-movant; however, the court is "not required to draw every conceivable inference from the record-only those inferences that are reasonable." *Bank Leumi Le-isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

The Court will treat General Revenue Corporation's motion to dismiss as a motion for summary judgment since it goes beyond the pleadings. Thus, General Revenue's motion for summary judgment and Debtor's motion for summary judgment are before the Court regarding the ultimate issue of violation of the discharge injunction by Defendants.

The Court entered the Order of Discharge pursuant to § 524(a)(2)[3] on May 6, 2005. Willful violations of the discharge injunction are punishable by contempt[4]. *In re Perviz*, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003); *In re Goodfellow*, 298 B.R. 358, 361 (Bankr. N.D. Iowa

---

[3] Section 524(a)(2) states:
(a) A discharge in a case under this title-
  (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2).

[4] In this case, the parties stipulated that punitive damages are not appropriate and should not be awarded.

5

2003). The standard of willfulness, similar to that set forth in § 362(h), requires evidence the offending creditor knew of the existence of the discharge order and intentionally took actions which violated its provisions. *Perviz*, 302 B.R. at 370. Knowledge of the order and willful violation must be established by clear and convincing evidence. *Goodfellow*, 298 B.R. at 362; *Koehler v. Grant*, 213 B.R. 567, 570 (B.A.P. 8th Cir. 1997). A creditor found in contempt for having willfully violated the discharge injunction is subject to an award of actual damages including attorneys fees. *Perviz*, 302 B.R. at 370; *Goodfellow*, 298 B.R. at 362. The movant must demonstrate, however, that the offending creditor's conduct relates to a debt that is encompassed by the discharge order, in other words, that it is a dischargeable debt. *In re Dunn*, 324 B.R. 175, 180 (D. Mass. 2005). Thus, the Court must determine whether the Debt at issue was encompassed by the Discharge Order or whether it was excepted from discharge under § 523(a)(8).

B. Definition of "Loan"

The first issue here is not whether Debtor's debt owed to Columbia College would impose an undue hardship on Debtor as is the usual student loan case, but rather whether the debt qualifies as a "loan" at all under § 523(a)(8). Where a statute's language is clear, the Court's obligation is to apply it according to its terms, unless such a literal application would produce an absurd result or one demonstrably at odds with the intent of the drafters. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

"[A] court's primary objective is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary and commonly understood meaning." *In re M & S Grading, Inc.*, 457 F.3d 898, 901 (8th Cir. 2006) (citing *Johnson v.*

6

*Methorst*, 110 F.3d 1313, 1315 (8th Cir. 1997).

At the time Debtor filed his bankruptcy petition, § 523(a)(8) provided:

> *A discharge under section 727...of this title does not discharge an individual debtor from any debt...[f]or an educational benefit or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution*, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8) (2005) (emphasis added).

Debtor argues that his debt owed to Columbia College was discharged per § 523(a)(8) because it was not a "loan" as required under that section. Debtor concedes that he owed Columbia College tuition for the spring semester of 2003 and executed a promissory note to that effect but argues that no money was disbursed by Columbia College to Debtor in connection with the transaction. Debtor urges the Court to apply the "plain meaning" of the term "loan" and cites definitions found in Black's Law Dictionary[5] and *In re Grand Union*, 219 F.2d 353, 356 (2nd Cir. 1914)[6]. Debtor argues that Columbia College did not disburse a "sum of money" to Debtor and that

---

[5] Black's Law Dictionary 936 (6th ed. 1990) defines "loan" as:
A lending. Delivery by one party to and receipt by another party of sum of money upon agreement, express or implied, to repay it with or without interest...Anything furnished for temporary use to a person at his request, on condition that it shall be returned, or its equivalent in kind, with or without compensation for its use.... "Loan" includes: (1) the creation of debt by the lender's payment of or agreement to pay money to the debtor or to a third party for the account of the debtor; (2) the creation of debt by a credit to an account with the lender upon which the debtor is entitled to draw immediately; (3) the creation of debt pursuant to a lender credit card or similar arrangement; and (4) the forbearance of debt arising from a loan.
The Court notes the definition in fact includes a "creation of debt by a credit to an account" which implies actual funds do not change hands.

[6]    A loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows. "In order to constitute a loan there must be a contract whereby, in substance one party transfers to the other a sum of money which that other agrees to repay absolutely, together with such additional sums as may be agreed upon for its use. If such be the intent of the parties, the transaction will be considered a loan without regard to its form." *In re Grand Union*, 219 F.2d 353,

7

the educational services furnished by Columbia College to debtor were not for "temporary use" nor were they expected to be "returned." Thus, Debtor asserts that the transaction between the parties was a sale of services, not a loan. Debtor also addresses *Johnson v. Missouri Baptist College*, 215 B.R. 750 (Bankr. E.D. Mo. 1997), *aff'd* 218 B.R. 449 (B.A.P. 8th Cir. 1998), a case upon which the Defendants rely, and argues that that case was wrongly decided.

The facts in the *Johnson* case are similar to the facts in this case. The creditor college had extended credit to the student debtor. The debtor executed a promissory note and later defaulted. That court found that the debt was a loan and was nondischargeable even though the debtor received no actual money from the college. In its motion for summary judgment, General Revenue contends that this Court should follow the reasoning in *Johnson*. However, Debtor argues that, as mentioned, the *Johnson* case was wrongly decided and that this Court is not bound by a decision of the Bankruptcy Appellate Panel. Debtor argues that case was wrongly decided for two reasons. First, Debtor asserts, the *Johnson* court ignored the plain meaning rule of statutory interpretation by basing its decision on the "effect" of the transaction rather than on the nature of the transaction. Second, Debtor argues that the Johnson facts do not satisfy the definition that court created for the term "loan."

Preliminarily, this Court acknowledges that it is not bound by a B.A.P. decision but that in this case, the Bankruptcy Appellate Panel's decision is persuasive. The 8th Circuit B.A.P. noted that some courts have found that a loan does not arise unless there is an actual advance of money to the debtor. *See Johnson*, 218 B.R. at 455 (citing, e.g., *In re Coole*, 202 B.R. 518 (Bankr. D.N.M. 1996)). Many of those decisions turned on the absence of a written agreement between the creditor

---

356 (2nd Cir. 1914).

college and debtor student, which distinguishes them from this case. Other circuits have found that an agreement between a college and a student to accept later payment and allow the student to attend classes qualifies as a loan where there is a prior or contemporaneous written agreement to transfer educational services in return for later payment of tuition. *See In re Chambers*, 348 F.3d 650, 651 (7th Cir. 2003) (finding unpaid tuition did not qualify as a "loan" because no separate agreement acknowledged the transfer and delayed the obligation for repayment); *In re Renshaw*, 222 F.3d 82, 88 (2nd Cir. 2000) (same); *In re Merchant*, 958 F.2d 738 (6th Cir. 1992) (credit extensions were loans for educational purposes; promissory note executed); *see also, Roberts v. Briar Cliff College and L.F. Noll, Inc.*, 2004 WL 2278773 (Bankr. N.D. Iowa 2004); *Stone v. Vanderbilt Univ. (In re Stone)*, 180 B.R. 499 (Bankr. M.D. Tenn. 1995)

This Court agrees with those courts that look to the common law definition of "loan" as paraphrased in *Renshaw,* 222 F.3d at 88.[7] That court found that to constitute a loan there must be: (1) a contract, whereby (2) one party transfers a defined quantity of money, goods, or services, to another, and (3) the other party agrees to pay for the sum or items transferred at a later date. *Id.* Under this interpretation, nonpayment of tuition qualifies as a loan "in two classes of cases": " 'where funds have changed hands,' or where 'there is an agreement ... whereby the college extends credit.' " *In re Mehta,* 310 F.3d 308, 314 (3rd Cir. 2002) (quoting *Renshaw,* 222 F.3d at 90). The agreement to transfer educational services in return for later payment must be reached "prior to or contemporaneous with the transfer" of those educational services. *Renshaw,* 222 F.3d at 88. This existence of a separate agreement acknowledging the transfer and delaying

---

[7]The *Renshaw* court paraphrased the "classic" definition of loan as articulated in *In re Grand Union*. In his brief, Debtor urges the Court to find that the common law definition set forth in that case causes the debt at issue to not qualify as a "loan." However, the *Renshaw* court's paraphrase of that definition is more in step with the plain meaning of "loan" and this Court believes that Debtor's interpretation of *Grand Union's* definition of loan is too narrow.

9

the obligation for repayment distinguishes a loan from a mere unpaid debt. This Court agrees with the *Johnson* panel that the word "loan" should be interpreted in such a way that "emphasizes the substance of the transaction and the underlying intent of the parties." *Johnson*, 218 B.R. at 455.; *see also, Roosevelt Univ. v. Oldham (In re Oldham)*, 220 B.R. 607, 612 (Bankr. N.D. Ill. 1998) ("[I]t defies common sense and the frequent use of the term to merely confine 'loan' to cash or money transactions. If one can 'loan' a tangible piece of property to someone, such as a tool, car or the like, one can 'loan' intangible things such as credit for unpaid tuition.").

Debtor's claim that the extension of credit, as evidenced by the promissory note, was not a loan, "overlooks the realities of most commercial transactions in which money, in its most concrete manifestation, never actually changes hands." *Johnson*, 218 B.R. at 457. As the *Johnson* court discussed, not all definitions of "loan" require an actual exchange of funds between a lender and a borrower and here, as in that case, Debtor signed a promissory note to evidence his debt to the college and his intent to repay such debt and, by allowing Debtor to attend classes without prepayment, Columbia College was effectually advancing funds to Debtor in the form of a loan[8]. This Court interprets the term "loan" in its "commonly understood meaning," and finds that actual money need not have changed hands between the Debtor and Columbia College as the parties intent that the transaction be a "loan" is clearly evidenced by the contemporaneous execution of a promissory note.

### C. Definition of "program funded"

---

[8] Section 523(a)(8) excepts from discharge three types of debt: (1) for an educational benefit or loan made, insured or guaranteed by a governmental unit; (2) for an educational benefit or loan made under any program funded in whole or in part by a governmental unit or nonprofit institution; or (3) for an obligation to repay funds received as an educational benefit, scholarship, or stipend. The Court notes that Congress specifically provided that funds be "received" by a debtor in the third section and presumably could have made the same such provision in the first or second sections, which it did not do. This further buttresses the Court's conclusion that funds need not actually be received by a debtor in order to qualify as a loan under those sections.

Section 523(a)(8) also requires that the "loan" be "made under any program funded in whole or in part by a governmental unit or nonprofit institution." Debtor argues that he did not receive a loan through a "program funded" by Columbia College as required by § 523(a)(8). The Court's review of the cases considering the question of whether advanced fees are a "loan" reveal that most of those cases did not reach the issue of whether the loan was made under a "program funded" by a non-profit institution. In this case, however, that issue is not stipulated to and must be established in order for § 523(a)(8) to except the loan from discharge. "Program" has been described as a voluntary, established practice, complete with guidelines specifying eligibility requirements. *See, e.g., DePasquale v. Boston Univ. School of Denistry*, 211 B.R. 439, 441 (Bankr. D. Mass. 1997), *rev'd on other grounds*, 225 B.R. 830 (B.A.P. 1st Cir. 1998). It seems clear that the Deferred Payment Plan as set forth in Columbia College's handbook is a "program" as the handbook sets forth guidelines and policies regarding the Deferred Payment Plan. *See* Stip. ¶ 11.

The question then becomes whether this program was "funded" by Columbia College[9]. In *In re O'Brien*, 299 B.R. 725, 730 (Bankr. S.D.N.Y. 2003), *aff'd*, 419 F.3d 104 (2nd Cir. 2005), the debtor received a Law Access student loan and TERI, a nonprofit institution, guaranteed the loan. The issue was whether the guarantor of a loan "funded" such loan as required by the statute. That court determined that Congress intended to include all loans made under a program in which a nonprofit institute plays any meaningful part in providing funds and that the term should be liberally construed. *O'Brien*, 299 B.R. at 730 (citing *In re Hammarstrom*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989). The bankruptcy court found that "the word 'funded' in §

---

[9]The parties have stipulated that Columbia College is a non-profit institution.

11

523(a)(8) encompasses any meaningful contribution to the provision of the loan, including the guarantee of the loan" and the Circuit Court affirmed, and found that the guarantor was "clearly devoting some of its financial resources to supporting the program" and thus had "funded" such program. *O'Brien*, 419 F.3d at 106. The court in *In re Drumm* determined that the creditor need only have played a meaningful part in procurement of the loans and that a meaningful financial contribution or a meaningful financial risk are not required. 329 B.R. 23, 34-35 (Bankr. W.D. Pa. 2005).

This Court believes that just as the definition of "loan" should not require that actual money change hands, the definition of "funded" should likewise not require that actual money be placed in some type of trust or account by the lender. In a case such as this, the lender "funded" the program by extending credit to the debtor in the form of a promissory note and in turn took the risk that should the debtor default on the note it may not receive its right to repayment of the funds loaned/extended pursuant to the note.

## IV. CONCLUSION

For all of the above reasons, the Court finds that the indebtedness owed by Debtor to Columbia College is not dischargeable and therefore denies Debtor's motion for summary judgment, grants Plaintiff General Revenue Corporation's motion to dismiss and denies Debtor's complaint seeking damages against Defendants Columbia College and General Revenue Corporation for violating the discharge injunction.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated: March 20, 2007                                         /s/ Dennis R. Dow

                                              THE HONORABLE DENNIS R. DOW
                                              UNITED STATES BANKRUPTCY JUDGE

Copies to:
J. Brian Baehr
Sharon L. Stolte
Amanda Miller